Civil Action No. 18-cv-00998-KLM

KAZMIERA FRAZIER,
RHONDA LAUBLER,
TERESA RIGGS,
ANITA SEWARD, and
KOALESHIA SIMON,
     individually and on behalf of all others similarly situated,

     Plaintiffs,

v.

THE WESTERN UNION COMPANY,
WESTERN UNION FINANCIAL SERVICES, INC.,
HIKMET ERSEK, and
VARIOUS "DOE" DEFENDANTS, including Western Union Officers, Directors, and Agents,

     Defendants.

_____

## ORDER
_____

**ENTERED BY MAGISTRATE JUDGE KRISTEN L. MIX**

     This matter is before the Court on Defendants' **Motion to Stay Proceeding Pending Arbitration Pursuant to Section 3 of the Federal Arbitration Act** [#33][1] (the "Motion").[2]  Thereafter, Defendants filed a Factual Supplement [#48], Plaintiffs filed a Response [#52] in opposition to the Motion [#33], and Defendants filed a Reply [#56].  The Court has reviewed the relevant briefs, the entire case file, and the applicable law, and is

_____

     [1] "[#33]" is an example of the convention the Court uses to identify the docket number assigned to a specific paper by the Court's case management and electronic case filing system (CM/ECF).  This convention is used throughout this Order.

     [2] This case has been referred to the undersigned for all purposes pursuant to D.C.COLO.LCivR 40.1(c) and 28 U.S.C. § 636(c), on consent of the parties.  *See* [#12, #13].

sufficiently advised in the premises. For the reasons set forth below, the Motion [#33] is **GRANTED**.

## I. Summary of the Case

Plaintiffs initiated this putative class action against The Western Union Company ("Western Union"), Western Union Financial Services, Inc. ("WUFSI"), Western Union's Chief Executive Officer Hikmet Ersek ("Ersek"), and various other unnamed Doe Defendants (collectively, "Defendants"). *Am. Compl.* [#27] at 4. Plaintiffs assert claims under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), the Colorado Organized Crime Control Act, and their respective state consumer protection laws.[3] *Id.* at 46-72. WUFSI, a subsidiary of Western Union, operates a "Money Transfer System" through which consumers send money to other individuals in the United States and around the world. *Id.* at 16. Each of the named Plaintiffs alleges that she was defrauded by an unnamed third-party fraudster who convinced her to send a fraudulent money transfer order. *Id.* at 5-6.

Money transfer orders sent through WUFSI are subject to a set of contractual terms and conditions ("Terms and Conditions") located on a pre-printed Send Money Form. *Motion* [#33] at 10, 12-13. The Terms and Conditions in place at the time of each of the named Plaintiffs' alleged money transfers included arbitration clauses, requiring the parties to arbitrate any disputes individually, rather than on a class-wide basis (the "Arbitration Clauses"). *Id.* at 10-11. Defendants maintain that the Terms and Conditions are included

---

[3] These consumer protection law claims are the California Unfair Competition Law, the Florida Deceptive and Unfair Trade Practices Act, the Georgia Fair Business Practices Act, the Illinois Consumer Fraud and Deceptive Business Practices Act, and the New Jersey Consumer Fraud Act. *Am. Compl.* [#27] at 60-72.

in both the Send Money Form customers fill out to send money and on the receipts given to customers after sending money transfer orders. *Id.* at 12-13. Defendants also assert that before a customer can send money using a Send Money Form, WUFSI's standard business practices require the customer to sign the form, agreeing to the accompanying terms and conditions. *Id.* at 13. Once the information on the Send Money Form is verified by a Western Union clerk on location, the clerk then prints a receipt for the customer. *Id.* at 14. Like the Send Money Form, Defendants assert that WUFSI's standard business practices require the customer to sign the receipt. *Id.*

At the relevant times of Plaintiffs' alleged fraudulently-induced money transfer orders, two separate Arbitration Clauses appeared in Defendants' Terms and Conditions. *Id.* at 11-12; *Response* [#52] at 10. One Arbitration Clause appeared in Send Money Form Terms and Conditions in 2005, and the other Arbitration Clause appeared in Send Money Form Terms and Conditions in 2016 and 2017. *Motion* [#33] at 11-12; *Response* [#52] at 10.

Defendants seek a stay of this case while arbitration proceedings are held. *Motion* [#33] at 7. At issue in the instant motion is: (1) whether Plaintiffs are bound by the Arbitration Clauses in dispute, (2) whether Defendants Ersek, Western Union, and WUFSI respectively are bound by the Arbitration Clauses in dispute, (3) whether the two individual Arbitration Clauses in question are enforceable, and (4) whether Plaintiffs' RICO claims fall within the scope of the Arbitration Clauses.

## II. Standard of Review

Issues of arbitrability are governed by the Federal Arbitration Act ("FAA"). *Belnap*

*v. Iasis Healthcare*, 844 F.3d 1272, 1279 (10th Cir. 2017). The FAA "manifests a liberal federal policy favoring arbitration." *Comanche Indian Tribe v. 49, L.L.C.*, 391 F.3d 1129, 1131 (10th Cir. 2004) (quoting *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 25 (1991)); *see also Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612, 1621 (2018). Consequently, the Court must "resolve 'any doubts concerning the scope of arbitrable issues . . . in favor of arbitration.'" *P&P Indus., Inc. v. Sutter Corp.*, 179 F.3d 861, 866 (10th Cir. 1999) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983)). In addition, "this liberal policy 'covers more than simply the substantive scope of the arbitration clause,' and 'encompass[es] an expectation that [arbitration] procedures will be binding.'" *Id.* (citation omitted).

Under the FAA, when parties agree to settle a controversy by arbitration, courts must enforce that agreement "save upon grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2 (2018). Such grounds include "generally applicable contract defenses, such as fraud, duress, or unconscionability." *Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 68 (2010) (quoting *Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 687 (1996)). "Under the FAA, unless the arbitration provision states otherwise, the question of the enforceability of a contract as a whole is a matter for the arbitrator. Only if an enforceability argument applies specifically to the arbitration provision (such as a claim that the provision is unconscionable or that a party was defrauded into agreeing to the arbitration provision) is enforceability to be decided by the court." *In re Cox Enters., Inc. Set-top Cable Television Box Antitrust Litig.*, 835 F.3d 1195, 1209 (10th Cir. 2016). While the Supreme Court recently held that courts should decide whether certain

types of employment contracts meet FAA exceptions prior to ordering arbitration, *see e.g.*, *New Prime Inc. v. Oliveira*, 139 S. Ct. 532, 538 (2019), this holding does not impact whether courts or the arbitrator should decide challenges to the overall contract.

Just as parties can agree to arbitrate the merits of a dispute, they can agree to arbitrate arbitrability, such as the validity and scope of an arbitration provision. *Rent-A-Center, W., Inc.*, 561 U.S. at 69. If the parties' contract delegates the issues of arbitrability, the party opposing arbitration must specifically dispute the validity of the delegation clause. *Id.* at 72.

"[A]lthough the presence of an arbitration clause generally creates a presumption in favor of arbitration, this presumption disappears when the parties dispute the existence of a valid arbitration agreement." *Bellman v. i3Carbon, LLC*, 563 F. App'x 608, 613 (10th Cir. 2014). Determining whether a dispute is subject to arbitration is "similar to summary judgment practice." *Id.* at 612 (quoting *Hancock v. Am. Tel. & Tel. Co.*, 701 F.3d 1248, 1261 (10th Cir. 2012)). The party moving to compel arbitration must present "evidence sufficient to demonstrate the existence of an enforceable agreement." *Id.* If sufficient evidence of an enforceable agreement is presented, the burden then shifts to the nonmoving party to "raise a genuine dispute of material fact regarding the existence of an agreement." *Id.*; *BigBen 1613, LLC, v. Belcaro Grp., Inc.*, No. 17-cv-00272-PAB-STV, 2018 WL 4257321, at *2 (D. Colo. Sept. 6, 2018). When analyzing whether the parties agreed to submit a specific dispute to arbitration, "[a]ll 'doubts are to be resolved in favor of arbitrability.'" *Coors Brewing Co. v. Molson Breweries*, 51 F.3d 1511, 1514 (10th Cir. 1995) (quoting *Oil, Chem., & Atomic Workers Int'l Union, Local 2-124 v. Am. Oil Co.*, 528 F.2d

252, 254 (10th Cir. 1976)).

Stays are generally disfavored in this District.  *See Wason Ranch Corp. v. Hecla Mining Co.*, No. 07-cv-00267-EWN-MEH, 2007 WL 1655362, at *1 (D. Colo. June 6, 2007). However, a stay may be appropriate in arbitration disputes given the strong federal policy in favor of arbitration agreements under the FAA.  *McWilliams v. Logicon Inc.*, 143 F.3d 573, 576 (10th Cir. 1998).  Once the Court determines that the claims are subject to an arbitration agreement, the Court must stay "the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration."  9 U.S.C. § 3.  If "all of [the] plaintiff's claims are subject to arbitration, under the FAA, [the Court] must stay litigation of the entire case pending arbitration."  *GATX Mgmt. Servs., LLC v. Weakland*, 171 F. Supp. 2d 1159, 1167 (D. Colo. 2001).

### III.  Analysis

The analysis begins by examining whether enforceable Arbitration Clauses exist between the parties. The Court first determines whether each Plaintiff is bound by an existing Arbitration Clause.  Next, the Court resolves whether Defendant WUFSI is bound by an Arbitration Clause, and whether Defendants Western Union and Ersek may enforce arbitration through equitable estoppel.

After determining whether Arbitration Clauses exist, the Court then examines whether the existing Arbitration Clauses are enforceable and whether Plaintiffs' disputes fall within their scope.  Regarding enforceability, the Court examines the enforceability of an Arbitration Clause which names an arbitrator who is no longer available for consumer

disputes. Additionally, the Court determines whether a separate Arbitration Clause is unconscionable. Finally, regarding the scope of Plaintiffs' disputes, the Court examines whether Plaintiffs' RICO claims fall within the scope of the Arbitration Clauses under the FAA.

## A.    Whether the Parties are Bound by the Arbitration Clauses

The Court starts by determining which parties are bound by the Arbitration Clauses. Defendants argue that an enforceable Arbitration Clause exists from each alleged fraudulent transaction asserted by each named Plaintiff. *Motion* [#33] at 18. In support of this argument, Defendants argue that each named Plaintiff assented to the Terms and Conditions in order to send her money transfers as required by WUFSI's standard business practices. *Id.* at 18-19. Additionally, Defendants argue that WUFSI is bound by the relevant Arbitration Clauses, and that both Arbitration Clauses apply to non-signatory Defendants Western Union and Ersek through the doctrine of equitable estoppel. *Id.* at 28-34.

Plaintiffs, by contrast, deny that Plaintiffs Kazmiera Frazier ("Frazier") and Koaleshia Simon ("Simon") ever agreed to Defendants' Terms and Conditions, which contain the Arbitration Clauses. *Response* [#52] at 26-32. Plaintiffs argue that WUFSI is not bound by the Term and Conditions, and therefore it cannot compel arbitration pursuant to the Arbitration Clause therein. *Id.* at 32-33. Further, Plaintiffs argue that the nonsignatory Defendants Western Union and Ersek also cannot enforce arbitration. *Id.* at 33-37.

At the outset, the Court notes Plaintiffs' position regarding who among Defendants is bound by the Terms and Conditions, and thus the Arbitration Clauses. It appears that

Plaintiffs assert that none of the named Defendants are parties or signatories to the Terms and Conditions. Plaintiffs argue that WUFSI cannot be bound by the Terms and Conditions and Arbitration Clauses as a nonsignatory. *Id.* at 32. Further, Plaintiffs argue that as nonsignatories to the Terms and Conditions, Defendants Western Union and Ersek are also not bound by the Arbitration Clauses. *Id.* at 33. It appears Plaintiffs argue that there is no Defendant who is bound by the Terms and Conditions giving rise to their substantive claims. *Id.* at 32-37. If that is the case, Plaintiffs' case seeks to hold Defendants accountable for a scheme to defraud customers through money order transactions, while they also argue that Defendants are not bound by the very agreements used in those transactions. *See Am. Compl.* [#27] at 22-36; *Response* [#52] at 32-37. Plaintiffs' contradictory argument defies logic, and the Court addresses this novel position in examining which Defendants can enforce arbitration in the analysis below.

Disputes are subject to arbitration when a valid and enforceable arbitration agreement exists, and when the dispute falls within the scope of those identified in the arbitration agreement. *See* 9 U.S.C. § 2; *Green Tree Fin. Corp. Ala. v. Randolph*, 531 U.S. 79, 89 (2000); *Newmont U.S.A. Ltd. v. Ins. Co. of N. Am.*, 615 F.3d 1286, 1274 (10th Cir. 2010). In determining whether a valid arbitration agreement exists, the Tenth Circuit relies on state law principles of contract formation to determine whether parties have agreed to arbitrate an issue or claim. *Hardin v. First Cash Fin. Servs., Inc.*, 465 F.3d 470, 475 (10th Cir. 2006); *Avedon Eng'g, Inc. v. Seatex*, 126 F.3d 1279, 1287 (10th Cir. 1987). Thus, under Colorado law,[4] contract formation principles govern whether parties have agreed to

---

[4] Both sets of Terms and Conditions in dispute contain a provision stating that the agreement is "governed by Colorado law without regard" to conflict of law rules. *See Ex. 14* [#33-

submit disputes to arbitration. *Allen v. Pacheco*, 71 P.3d 375, 378 (Colo. 2003). An arbitration agreement governed by the FAA is presumed to be valid and enforceable, and the party resisting arbitration bears the burden of proving that Congress intended to preclude arbitration of the claims at issue. *Randolph*, 531 U.S. at 91-92.

In ruling on a motion to stay pending arbitration, a federal court may consider "only issues relating to the making and performance of the agreement to arbitrate." *Prima Paint Corp.*, 388 U.S. at 404. This includes whether any agreement between the parties was ever concluded. *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 441 n.1 (2006). However, the arbitrator, not the Court, should determine whether the contract overall is otherwise enforceable. *In re Cox*, 835 F. 3d at 1210. Thus, the Court begins its analysis by determining whether any arbitration agreements exists, and what parties are bound by them.

The party seeking arbitration must present sufficient evidence demonstrating the existence of an arbitration agreement. *Bellman*, 563 F. App'x at 612. If sufficient evidence of an enforceable agreement is presented, the burden then shifts to the nonmoving party to "raise a genuine dispute of material fact regarding the existence of an agreement." *Id.*; *BigBen 1613, LLC*, 2018 WL 4257321, at *2. Facts are "material" if they are essential to the proper disposition of the claim under the relevant substantive law. *Wright v. Abbott Labs., Inc.*, 259 F.3d 1226, 1231-32 (10th Cir. 2001). A dispute is "genuine" if the evidence might lead a reasonable juror to return a verdict for the nonmoving party. *Allen v. Muskogee, Okla.*, 119 F.3d 837, 839 (10th Cir 1997).

---

16] at 6; *Ex. 2* [#33-4] at 6. Also, both parties employ Colorado contract law in their arguments pertaining to contracts at large. *See Response* [#52] at 21; *Reply* [#56] at 18.

In order to meet their initial burden of demonstrating the existence of enforceable arbitration agreements here, Defendants rely on: (1) the signed Terms and Conditions containing the Arbitration Clauses produced by certain Plaintiffs, (2) deposition testimony of certain Plaintiffs admitting that they signed the Terms and Conditions when conducting their transactions, and (3) WUFSI's standard business practices and procedures in sending money orders, with respect to Plaintiffs who have not produced signed Terms and Conditions and who testified that they do not recall signing arbitration agreements during their respective transactions. *Reply* [#56] at 8; *Motion* [#33] at 18-19; *see also Factual Suppl.* [#48] at 3-6. To further establish the practices and procedure associated with WUFSI money order transactions, Defendants submitted the Declarations of Edgardo Torres ("Torres")[5] and Lisa Sherman ("Sherman").[6] *Reply* [#56] at 8; *Motion* [#33] at 18-19; *Torres Decl.* [#33-1] at 1-5; *Sherman Decl.* [#33-2] at 1-12.

Additionally, the Court considers whether Defendants Western Union, Ersek, and WUFSI are bound by the Arbitration Clauses, allowing them to enforce arbitration. Defendants argue that despite being a nonsignatory to the Terms and Conditions, WUFSI is still bound by the Arbitration Clauses. *Motion* [#33] at 28; *Reply* [#56] at 25. Similarly, Defendants argue that Defendants Western Union and Ersek can enforce arbitration without being signatories to the Terms and Conditions through the doctrine of equitable estoppel. *Motion* [#33] at 32; *Reply* [#56] at 25. The Court address these arguments in

---

[5] Mr. Torres is Western Union's Global Head of Agent Operations. *Torres Decl.* [#33-1] at 1-2.

[6] Ms. Sherman is a Senior Manager, Vendor Relations for Western Union LLC. *Sherman Decl.* [#33-2] at 1.

turn.

**1.    Whether Plaintiffs Laubler, Riggs and Seward are Bound by the Arbitration Clauses**

It is undisputed that Plaintiffs Rhonda Laubler ("Laubler"), Teresa Riggs ("Riggs"), and Anita Seward ("Seward") either produced signed Terms and Conditions from their alleged fraudulent transactions or testified that they signed agreements prior to sending their money orders. *Factual Suppl.* [#48] at 3-4. Plaintiffs Laubler, Riggs, and Seward's relevant transactions took place throughout 2016 and 2017. *Id.* During this period, the Terms and Conditions contained on the Send Money Forms and order receipts included an arbitration clause stating that National Arbitration and Mediation ("NAM") (the "NAM Arbitration Clause") will administer any arbitration arising from a dispute. *Motion* [#33] at 12.

Defendants assert that the copies of signed receipts and affirmative testimony regarding signed receipts are sufficient to establish the existence of an agreement to arbitrate. *Id.* at 19; *Factual Suppl.* [#48] at 3-6. The Court agrees. *See Bellman*, 563 F. App'x at 613; *Hancock*, 701 F.3d at 1264. Plaintiffs Seward and Laubler each produced copies of receipts that they received in connection with their transactions at issue. *Factual Suppl.* [#48] at 3-4. Plaintiff Riggs did not produce any documentation relating to her transactions but testified that she completed and signed a Send Money Form in connection with each of her money transfers. *Id.* at 4. Thus, Defendants have produced evidence that the parties were presented with the NAM Arbitration Clause in the course of their disputed transactions, and that Plaintiffs Laubler, Riggs, and Seward assented to the agreements with their signatures. As a result, Defendants have met their initial burden of demonstrating

an enforceable arbitration agreement with respect to the NAM Arbitration Clause. *Bellman*, 563 F. App'x at 613.

Plaintiffs do not dispute the existence of agreements for Plaintiffs Laubler, Riggs, and Seward because these three Plaintiffs have produced copies of signed Terms and Conditions from their transactions or testified to signing receipts. *Response* [#56] at 27; *Factual Suppl.* [#48] at 3-5. Therefore, Plaintiffs do not raise a genuine issue of material fact. *Bellman*, 563 F. App'x at 613. Thus, the Court finds that Plaintiffs Laubler, Riggs, and Seward are bound by the Arbitration Clauses.

### 2. Whether Plaintiffs Frazier and Simon are Bound by the Arbitration Clauses

Unlike Plaintiffs Laubler, Riggs, and Seward, Plaintiffs Frazier and Simon did not produce any evidence or testimony of signed Terms and Conditions. *Factual Suppl.* [#48] at 4-6. Plaintiff Simon's disputed transaction occurred in 2016, purportedly making her subject to the NAM Arbitration Clause included in the Terms and Conditions from 2016 through 2017. *Response* [#52] at 10. Plaintiff Frazier's disputed transaction occurred in 2005, purportedly making her subject to an older version of the Terms and Conditions which listed the National Arbitration Foundation ("NAF") (the "NAF Arbitration Clause") as the arbitrator. *Id.* Plaintiffs Frazier and Simon both testified that they do not specifically recall whether they signed any documentation with respect to their transactions in dispute. *Id.* Plaintiff Frazier testified that she filled out a form provided at the Western Union location where she completed her transaction that looked like a Send Money Form, and she received a receipt. *Id.* at 5-6. However, she does not recall whether she signed either the money transfer form or her receipt. *Id.* Plaintiff Simon similarly testified that she filled out

a form in connection with her transaction and received a receipt but cannot recall signing either document. *Id.* at 4-5.

Evidence of an organization's routine practice "may be admitted to prove that on a particular occasion the . . . organization acted in accordance with the . . . routine practice." *Hancock*, 701 F.3d at 1261 (citing Fed. R. Evid. 406). Such evidence of routine practice is admissible "regardless of whether it is corroborated or whether there was an eyewitness." *Hancock*, 701 F.3d at 1261. Personal knowledge of what happened when the individual plaintiffs completed their transactions is not required to admit Rule 406 routine practice evidence. *Id.* at 1264 (citing *Derby & Co., Inc. v. Seaview Petroleum Co.*, 756 F. Supp. 868, 867 n.8 (E.D. Pa. 1991)). Personal knowledge of whether the standard practice is followed when customers complete transactions is "enough to raise the inference that the standard practice was followed," and "shift[s] the burden to the Plaintiffs to raise a genuine factual dispute." *Hancock*, 701 F.3d at 1264.

Defendants argue that despite the lack of physical evidence and testimony, they have demonstrated the existence of arbitration agreements with respect to Plaintiffs Frazier and Simon due to evidence of WUFSI's standard business practices and procedures. *Motion* [#33] at 18-19; *Reply* [#56] at 7-12. In support of this argument, Defendants rely on the declaration and testimony of Mr. Torres to establish the standard business practices followed by Western Union and WUFSI in operating their Money Transfer System. *Motion* [#33] at 18-19; *Reply* [#56] at 10. Further, Defendants argue that separate from WUFSI's standard business practices, Plaintiffs Frazier and Simon were both on notice of the Terms and Conditions containing the Arbitration Clauses and accepted them through the course

of their conduct alone.  *Reply* [#56] at 12.  Finally, Defendants argue that signatures are not required to establish an enforceable arbitration agreement.  *Id.*

Plaintiffs dispute that Plaintiffs Frazier and Simon ever entered into the Terms and Conditions with Defendants.  *Response* [#52] at 26.  They note that Defendants admit that they do not possess signed Terms and Conditions, on either Send Money Forms or receipts, for Plaintiffs Frazier and Simon.  *Id.* at 27.  Further, Plaintiffs argue that since Plaintiffs Simon and Frazier did not produce signed Terms and Conditions in discovery and do not recall signing an agreement as a part of their relevant transactions, no evidence of any agreement to arbitrate exists.  *Id.*  Plaintiffs argue that Defendants improperly rely on habit evidence to demonstrate that Plaintiff Simon signed her Send Money Forms or receipts because there is no direct evidence that she "reflexively" signed Send Money Forms or receipts.  *Id.* at 28.  Finally, Plaintiffs argue that Defendants have failed to establish the existence of an Arbitration Clause through WUFSI and Western Union's standard business practices because the declarations of Mr. Torres and other Western Union employees cannot establish that these practices are followed at every location and in every transaction sending a money order.  *Id.* at 29-30.

Here, the Declarations of Mr. Torres and Ms. Sherman support their personal knowledge of the standard practices followed in WUFSI transactions when customers agree to the Terms and Conditions.  *Motion* [#33] at 18-20; *Reply* [#56] at 7-12; *Torres Decl.* [#33-1] at 1-5; *Sherman Decl.* [#33-2] at 1-12.  Plaintiffs' arguments that Mr. Torres does not have personal knowledge of the specific transactions in question and the habits of independent location clerks and agent locations are not material to the Court's inquiry

here. *Hancock*, 701 F.3d at 1264; *Response* [#52] at 29-30. Rather, the Court looks to the declarations of Mr. Torres and Ms. Sherman regarding their personal knowledge of the standard practices employed by WUFSI in sending money orders. *Hancock*, 701 F.3d at 1264. Mr. Torres is responsible for overseeing and developing procedures that independent agents follow when they process money transfers. *Reply* [#56] at 10. Additionally, Mr. Torres is familiar with the process in which customers send money transfers, and when customers receive or have a chance to sign a copy of the Terms and Conditions. *Id.* Specifically, Mr. Torres is aware that a copy of the Terms and Conditions is included on all receipts given to customers, and he is also not aware of any situations in which a money transfer is sent without a customer failing to sign a receipt. *Id.* Thus, the Court finds that Defendants have presented sufficient evidence that the standard practices employed by WUFSI included use of documents with arbitration clauses. *Hancock*, 701 F.3d at 1262; *Factual Suppl.* [#48] at 4-6.

The fact that Plaintiffs Frazier and Simon do not specifically recall whether they signed receipts or Send Money Forms is also not material to this inquiry. *Response* [#52] at 27. A signature is not required to establish the existence of an enforceable arbitration agreement. *See E-21 Eng'g, Inc. v. Steve Stock & Assoc., Inc.*, 252 P.3d 36, 39 (Colo. App. 2010); *Todd Haberman Constr. Inc. v. Epstein*, 70 F. Supp. 2d 1170, 1174 (D. Colo. 1999). Parties can be bound to agreement of essential contract terms by their conduct. *Yaekle v. Andrews*, 195 P.3d 1101, 1107 (Colo. 2008). Given that Plaintiffs Frazier and Simon both testified to receiving receipts after their transactions in question, their conduct evidences assent to the Terms and Conditions. *Yaekle*, 195 P.3d at 1107; *Factual Suppl.*

[#48] at 4-6.  Additionally, Plaintiffs Frazier and Simon do not deny signing receipts or Send Money Forms; rather, they simply cannot recall specifically whether they signed them.  *Response* [#56] at 27-28.  The fact that Plaintiffs Frazier and Simon recall receiving receipts and do not affirmatively deny signing a Send Money Form or receipt means there is no genuine issue of material fact sufficient to dispute the existence of arbitration agreements.  *Bellman*, 563 F. App'x at 613.

Thus, the Court finds that Defendants have met their initial burden of presenting sufficient evidence that there was notice of and assent to the Terms and Conditions containing Arbitration Clauses for Plaintiffs Frazier and Simon.  *Id.*  Additionally, the Court also finds that Plaintiffs, in response, failed to meet their burden of raising a dispute of material fact with respect to the existence of Terms and Condition with Plaintiffs Frazier and Simon.  Therefore, the Court finds the existence of enforceable Arbitration Clauses, and Plaintiffs Frazier and Simon are bound by them.

### 3. Whether Defendant WUFSI is Bound by the Arbitration Clauses

WUFSI is Western Union's subsidiary in charge of the global Money Transfer System.  *Am. Compl.* [#27] at 5. Defendants contend that WUFSI is bound by the Arbitration Clauses discussed above.  *Motion* [#33] at 28.  The Arbitration Clause in place in 2005 contained a provision naming the NAF as the arbitrator in the NAF Arbitration Clause.  *Sherman Decl.* [#33-2] at 3.  Defendants contend that WUFSI is a party to the NAF Arbitration Clause, making it bound to the provisions of the Arbitration Clause.  *Motion* [#33] at 28-31.  In opposition, Plaintiffs rely on *Tennille v. Western Union Co.*, in which the Court held that WUFSI was not entitled to a stay of proceedings to enforce arbitration.

Nos. 09-cv-938-JLK, 10cv-765-JLK, 2011 WL 6778780, at *1 (D. Colo. Dec. 23, 2011). Finding that WUFSI failed to prove the existence of a binding arbitration agreement with the plaintiffs, the Court supported its decision with two main lines of reasoning. *Id.* at *1-2. First, the Court held that WUFSI was neither a signatory nor a party to the arbitration agreement found in the adhesion contract. *Id.* Second, the Court found that there was no "factual or legal distinction between WUFSI and [Western Union] that would permit WUFSI to enforce the agreement against [the] [p]laintiffs two years into [ ] litigation" after Western Union had already submitted to the jurisdiction of the court and litigated substantive defenses. *Id.* at *2.

While the Court has considered the decision in *Tennille*, the Court finds that material differences exist between the circumstances in *Tennille* and the situation here. With respect to *Tennille's* first line of reasoning, Defendants assert that WUFSI is bound by the NAF Arbitration Clause, and ask that the Court distinguish *Tennille* for the purposes of the instant Motion. [#33] at 28. Given Plaintiffs' argument (addressed below) that nonsignatory Defendants Western Union and Ersek cannot be bound by the Terms and Conditions or Arbitration Clauses, Plaintiffs essentially assert that there is no Defendant or Western Union-linked entity that could be bound by the Terms and Conditions or Arbitration Clauses. *Id.* Following this line of reasoning would ultimately mean that Western Union and WUFSI created Terms and Conditions containing Arbitration Clauses that were applicable to their customers, but not to any of the money transferring entities. *Motion* [#33] at 30. That result would be, of course, implausible.

Plaintiffs here acknowledge that WUFSI operates Western Union's Money Transfer

System. *Am. Compl.* [#27] at 5. Unlike *Tennille*, there is no ambiguity regarding whether WUFSI is a party bound by the Terms and Conditions on the Send Money Forms used to initiate transactions in WUFSI's Money Transfer System. 2011 WL 6778780 at *1. Here, the Terms and Conditions apply to the customers using the Money Transfer System and the party providing the money transfer services. In Plaintiffs' transactions, those two parties are clearly Plaintiffs and WUFSI. *Am. Compl.* [#27] at 5.

Moving to *Tennille's* second line of reasoning that there is no factual or legal distinction between Western Union and WUFSI that would permit WUFSI to enforce the Arbitration Clause two years into litigation after Western Union submitted substantive defenses, the present circumstances are again inapplicable to *Tennille's* holding. First, the case here has been in litigation for less than one year, and no Defendants have submitted any substantive defenses at this stage of the litigation. *Am. Compl.* [#27] at 1, 73. Second, any further factual or legal distinction between Western Union and WUFSI does not bear on the Court's analysis. Here, Plaintiffs' claims all stem from the same conduct alleged against all named Defendants, which makes any legal distinction between these entities immaterial so long as some Western Union entity is covered by the Terms and Conditions. *Am. Compl.* [#27] at 8-41; *See Meister v. Stout*, 353 P.3d 916, 918 (Colo. App. 2015) (holding that a signatory plaintiff "may be equitably estopped from avoiding arbitration when he sues a nonsignatory on claims that . . . allege interconnected and concerted misconduct between the nonsignatory and one or more of the signatories related to that agreement"). WUFSI is a Western Union entity covered by the Terms and Conditions, making any further legal distinction between other nonsignatory entities immaterial to the Court's analysis.

Finally, principles of contract interpretation also guide the Court's decision. In determining the meaning of a contract, courts "seek to give effect to all provisions so that none will be rendered meaningless." *Mapes v. City Council of City of Walsenburg*, 151 P.3d 574, 577 (Colo. App. 2006). If the Court applied the logic of *Tennille* to the present case, the Court would be rendering countless contractual Terms and Conditions between WUFSI and customers around the country meaningless. Thus, the Court respectfully finds that *Tennille* is distinguishable, and finds that WUFSI is bound by the Terms and Conditions and its Arbitration Clause.

### 4.    Whether Defendants Western Union and Ersek are Bound by the Arbitration Clauses

Plaintiffs contend that Defendants Western Union and Ersek cannot enforce arbitration because they are not parties to the agreements containing the Arbitration Clauses. *Response* [#52] at 32-37. Defendants argue that although they are non-signatories to both the NAF and NAM Arbitration Clauses, Defendants Western Union and Ersek can enforce arbitration through equitable estoppel. *Id.* at 31-34; *Reply* [#56] at 25-28.

Colorado law governs whether Defendants Western Union and Ersek can enforce arbitration. *See Belnap*, 844 F.3d at 1293. In Colorado, "both signatory and nonsignatory parties may be bound by an arbitration agreement if so dictated by ordinary principles of contract law." *Meister v. Stout*, 353 P.3d 916, 920 (Colo. App. 2015). Equitable estoppel binds parties to arbitration agreements in two scenarios. *Id.* As relevant here, the second scenario arises when a signatory asserts a claim arising from a contract against a nonsignatory to the contract. *Id.* Under the second scenario, equitable estoppel is also

available "when a signatory alleges substantially interdependent and concerted misconduct by a nonsignatory and one or more signatories to the agreement." *Id.* at 921 (citing *GATX Mgmt. Servs.*, 171 F. Supp. 2d at 1166). Allegations of interconnected misconduct support estoppel "only when they establish that the claims against the nonsignatory are intimately founded in and intertwined with the obligations imposed by the contract containing the arbitration clause." *Lenox MacLaren Surgical Corp. v. Medtronic, Inc.*, 449 F. App'x 704, 710 (10th Cir. 2011) (quoting *In re Humana, Inc., Managed Care Litig.*, 25 F.3d 971, 975 (11th Cir. 2002) (internal quotation marks omitted)).

Defendants argue that this scenario is applicable in this case, thus allowing nonsignatories Defendants Western Union and Ersek to enforce arbitration. *Motion* [#33] at 33-34; *Reply* [#56] at 25-28. In support of this argument, Defendants assert that each of Plaintiffs' claims apply equally to Defendants Western Union and Ersek. *Motion* [#33] at 33-34. Further, Defendants argue that Plaintiffs' claims are intertwined with the Terms and Conditions, because Plaintiffs' claims arise out of money transfers governed by the Terms and Conditions. *Reply* [#56] at 27.

Plaintiffs argue that this scenario is inapplicable here, because there is no need for an arbitrator to reference the Terms and Conditions in adjudicating Plaintiffs' claims. *Response* [#52] at 36. Therefore, Plaintiffs assert that their claims are not intertwined with the duties and obligations of the Terms and Conditions. *Id.*

The Court finds that the nonsignatory Defendants may enforce the Terms and Conditions and the Arbitration Clauses. First, Plaintiffs' claims against the signatory and nonsignatory Defendants Western Union and Ersek are interdependent. *Meister*, 353 P.3d

at 921.  Plaintiffs assert all of their claims collectively against all Defendants.  *Am. Compl.* [#27] at 46-72 (asserting RICO claims "Against All Defendants").

Second, the Court finds that Plaintiffs' claims are intertwined with the duties and obligations arising from the Terms and Conditions.  "As the main document[s] governing the parties' relationship, the arbitrator will have to reference the [agreements'] terms, requirements, and duties in adjudicating Plaintiffs' claims."  *Santich v. VCG Holding Corp.*, No. 17-cv-00631-RM-MEH, 2017 WL 4251944, at *23 (D. Colo. Sept. 26, 2017).  All of Plaintiffs' claims arise from disputed transactions involving the Terms and Conditions contained on the Send Money Forms and receipts.  *Am. Compl.* [#27] at 8-15.  The Court finds the reasoning in *Pollard v. ETS PC, Inc.* to be persuasive.  186 F. Supp. 3d 1166 (D. Colo. 2016).  In *Pollard*, the Court found that the plaintiffs' Fair Labor Standards Act claims against nonsignatory defendants were intertwined with the duties and obligations from the parties' employment agreement because "an arbitrator will need to examine and interpret" the employment agreements to determine whether the "[p]laintiffs' claims implicate or are affected by those [a]greements."  *Id.* at 1175.

Plaintiffs dispute that the duties and obligations set forth in the Terms and Conditions are necessary to resolve their claims, pointing to the fact that the Arbitration Clause and the Terms and Conditions are not mentioned at all in the Amended Complaint [#27].  *Response* [#52] at 36.  Plaintiffs argue that *Lenox MacLaren Surgical Corp. v. Medtronic, Inc.* is more persuasive in this scenario.  449 F. App'x 704, 710 (10th Cir. 2011).  In *Medtronic*, the court found that the plaintiffs' antitrust claims were not intertwined with the duties and obligations of the licensing agreement containing an arbitration provision.  *Id.*

at 710-11.  Holding that the nonsignatory parent company could not compel arbitration, the court found that the arbitrator would not need to analyze the terms and obligations of the licensing agreement to determine whether the signatory and non-signatory defendants had agreed to engage in anticompetitive conduct.  *Id.* at 711.

The Court finds the situation here distinct from *Medtronic*.  The arbitrator in this case would need to consider the Terms and Conditions in resolving Plaintiffs' claims.  *Pollard*, 186 F. Supp. 3d at 1175.  For example, Plaintiffs allege that Defendants failed to warn Plaintiffs about "fraud occurring through Western Union's Money Transfer System."  *Am. Compl.* [#27] at 34.  The arbitrator would need to look to the only documentation involved in Plaintiffs' transactions, the Send Money Forms containing the Terms and Conditions and receipts, in order to fully understand what kind of warnings, if any, were provided by Defendants.  Further, the Terms and Conditions are also relevant to Plaintiffs' claims because of the limited liability clause, which provides that Western Union shall not be liable for any damages over $500.  *See Ex. 1* [#33-3] at 5; *Ex. 14* [#33-16] at 6.  Here, Plaintiffs seek over $500 in damages, making the limited liability clause relevant to the arbitrator's assessment of damages.  *Response* [#52] at 18; *Am. Compl.* [#27] at 72-73.

Thus, the Court finds that Plaintiffs' claims asserted against the signatory Defendant WUFSI are interdependent with those claims asserted against the nonsignatory Defendants Western Union and Ersek and are intertwined with the Terms and Conditions.  As such, the Court finds that Defendants Western Union and Ersek are bound by the Arbitration Clauses, and may enforce arbitration against Plaintiffs pursuant to the Arbitration Clauses.

**B. Whether the Existing Arbitration Clauses are Enforceable and the Disputes Fall Within Their Scope**

Defendants have established the existence of contractual Terms and Conditions including the Arbitration Clauses, satisfying the first requirement to enforce arbitration. *See* 9 U.S.C. § 2; *Randolph*, 531 U.S. at 89; *Newmont U.S.A. Ltd.*, 615 F.3d at 1274. The second step to enforce arbitration is a showing that the arbitration clauses are enforceable and the disputes fall within their scope. *Randolph*, 531 U.S. at 89; *Newmont U.S.A. Ltd.*, 615 F.3d at 1274. Plaintiffs challenge both the enforceability of the Arbitration Clauses and their scope, specifically as to their respective RICO claims.

Importantly, the Court notes at the outset that challenges to the contract as a whole are for the arbitrator to decide. *Prima Paint Corp.*, 388 U.S. at 404; *In re Cox*, 835 F.3d at 1209. The Court only decides enforceability issues specific to arbitration provisions, such as unconscionability or fraudulent inducement. *Id.* A challenge to the enforceability of a larger contract in this case is for the arbitrator to decide, not the Court. *In re Cox*, 835 F.3d at 1209. Here, any arguments relating to the enforceability of the Terms and Conditions as a whole are for the arbitrator. Further, as addressed below, any attempts to invalidate specific provisions of the Arbitration Clause, such as a delegation provision, by challenging the validity of a larger agreement are for the arbitrator to decide. *See Rent-A-Center, W., Inc.*, 561 U.S. at 74.

**1. Enforceability of the Arbitration Clauses**

Plaintiffs raise separate arguments disputing the enforceability of the NAF and NAM

Arbitration Clauses. *Response* [#52] at 10-26. Regarding the NAF Arbitration Clause,[7] Plaintiffs argue that the designation of an unavailable arbitrator renders the agreement unenforceable. *Id.* at 11. With respect to the NAM Arbitration Clause,[8] Plaintiffs argue that the agreement is unenforceable because it precludes the effective vindication of Plaintiffs' RICO claims and is unconscionable, and because the individual NAM Rules cannot be severed from the agreement. *Id.* at 15-25.

### a. Whether the NAF Arbitration Clause is Enforceable

Plaintiffs argue that if Plaintiff Frazier is bound by the NAF Arbitration Clause, she would then be subject to an arbitrator which is no longer allowed to arbitrate consumer disputes. *Motion* [#33] at 22-23; *Response* [#52] at 11. Plaintiff Frazier's dispute arises from a transaction in 2005. *Response* [#52] at 10. The Terms and Conditions included on Send Money Forms used in 2005 contained provisions naming the NAF as the forum to administer any arbitration arising from a dispute. *Motion* [#33] at 11; *Response* [#52] at 11. The following language is included in the 2005 NAF Arbitration Clause:

> Any dispute or claim arising from or relating to this transaction, including disputes regarding this paragraph, shall be settled by binding arbitration administered by the National Arbitration Forum ("NAF") under its Code of Procedure in effect when the dispute is filed, and shall be arbitrated in the most populous city in the state where the transaction was sent. Each party shall bear its own attorneys', experts' and witness fees. Neither party shall have the right to participate as a member of any class of claimants pertaining to any claim. Third parties' claims shall not be joined in any arbitration between the parties. Information may be obtained and disputes may be filed at a NAF office, www.arbitration-forum.com, or at P.O. Box 50191,

---

[7] The NAF Arbitration Clause applies to Plaintiff Frazier's transaction from 2005. *Response* [#52] at 10.

[8] The NAM Arbitration Clause applies to Plaintiffs Laubler, Riggs, Seward, and Simon's transactions from 2016 and 2017. *Response* [#52] at 15 n.6.

> Minneapolis, MN 55405. This paragraph is made pursuant to a transaction involving interstate commerce and shall be governed by the Federal Arbitration Act, 9 U.S.C. § 1-16. EXCEPT AS EXPRESSLY PROVIDED IN THIS PARAGRAPH, THE PARTIES WAIVE ALL RIGHTS TO A COURT OR JURY TRIAL TO RESOLVE AGREEMENT DISPUTES.

*Motion* [#33] at 11. It is undisputed that NAF, however, no longer conducts consumer arbitrations. *Motion* [#33] at 22; *Response* [#52] at 11. NAF has not been accepting new consumer cases for arbitration since July 2009, when it settled a suit brought by Minnesota's Attorney General. *See Green v. U.S. Cash Advance Ill., LLC*, 724 F.3d 787, 788 (7th Cir. 2013). Thus, Plaintiffs argue that the unavailability of the forum mentioned in the NAF Arbitration Clause renders the Arbitration Clause unenforceable for Plaintiff Frazier. *Id.*

Defendants argue that the FAA and Colorado contract law both support upholding the enforceability of the NAF Agreement despite the unavailability of NAF. *Motion* [#33] at 22. Defendants assert that Section 5 of the FAA explicitly contemplates a situation where a named arbitrator is unavailable. *Id.* at 23. Further, Defendants argue that while the Tenth Circuit has not addressed the issue directly, a majority of federal circuit courts have upheld arbitration agreements even when NAF is not available. *Id.* at 25. Given the FAA's "liberal policy favoring arbitration agreements," the Court agrees. *Epic Sys. Corp.*, 138 S. Ct. at 1621 (quoting *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 24).

Federal circuits are split on this issue. Although, the Tenth Circuit Court of Appeals has apparently not yet ruled on this specific issue, the Second, Third, Fifth, Sixth, Seventh, Eighth, Ninth, and Eleventh Circuits have all issued opinions on the topic. *See Robinson v. EOR-ARK, LLC*, 841 F.3d 781, 784 (8th Cir. 2016); *Moss v. First Premier Bank*, 835 F.3d

260, 265 (2d Cir. 2016); *Smith v. ComputerTraining.Com*, *Inc.*, 531 F. App'x 713, 714 (6th Cir. 2013); *Green*, 724 F.3d at 792-93 (7th Cir.); *Khan v. Dell Inc.*, 669 F.3d 350, 354 (3d Cir. 2012); *Ranzy v. Tijerina*, 393 F. App'x 174, 176 (5th Cir. 2010); *Reddam v. KPMG LLP*, 457 F.3d 1054, 1060-61 (9th Cir. 2006). Most circuits narrow this issue to an interpretation of whether Section 5 of the FAA applies, allowing courts to appoint a substitute arbitrator. *See Khan v. Dell Inc.*, 669 F.3d 350, 354 (3d Cir. 2012); *Brown v. ITT Consumer Fin. Corp.*, 211 F.3d 1217, 1222 (11th Cir. 2000). Section 5 of the FAA provides a mechanism for substituting an arbitrator when the designated arbitrator is unavailable. 9 U.S.C. § 5 (stating "if for any other reason there shall be a lapse in the naming of an arbitrator or arbitrators or umpire . . . then upon the application of either party to the controversy the court shall designate and appoint an arbitrator"). Courts have construed this provision as requiring a determination of whether the designation of the arbitrator was "integral" to the arbitration provision, or was merely an ancillary consideration. *Khan*, 669 F.3d at 354.

Five federal circuit courts, the Third, Sixth, Seventh, Eighth, and Ninth Circuits, have upheld arbitration agreements despite their naming of an unavailable arbitrator. *See Robinson*, 841 F3.d at 784; *Smith*, *Inc.*, 531 F. App'x at 714; *Green*, 724 F.3d at 792-93; *Khan*, 669 F.3d at 354; *Reddam*, 457 F.3d at 1060-61. The Third, Fifth, and Eighth Circuits have found circumstances where NAF is not integral to the arbitration provision. *See Robinson*, 841 F3.d at 784; *Smith*, 531 F. App'x at 714; *Khan*, 669 F.3d at 354. Additionally, while not dealing specifically with NAF, the Ninth Circuit has similarly held that the choice of arbitrator was not integral to the arbitration agreement and upheld the agreement. *Reddam*, 457 F.3d at 1060-61. The Seventh Circuit rejected the "integral" test,

finding that no court has ever explained what part of the FAA requires or authorizes such a test. *Green*, 724 F.3d at 792-93 (holding an arbitration agreement naming NAF as an arbitrator valid because the parties clearly selected private dispute resolution).

Conversely, the Second and Fifth Circuits have found circumstances where NAF is integral to the arbitration agreement, invalidating the agreements. *See Moss v. First Premier Bank*, 835 F.3d 260, 265 (2d Cir. 2016); *Ranzy v. Tijerina*, 393 F. App'x 174, 176 (5th Cir. 2010).

Although there is no applicable guidance from the Tenth Circuit on this specific issue, this District has upheld arbitration agreements where the named arbitrator is not available. *See, e.g.*, *McGuire, Cornwell & Blakely v. Grider*, 771 F. Supp. 319, 320 (D. Colo. 1991); *Stone v. Vail Resorts Dev. Co.*, No. 09-cv-02081-WYD-KLM, 2012 WL 6634906, at *1 (D. Colo. Dec. 20, 2012). Colorado contract law instructs courts to give full effect to the general purposes of a contract, and the intent of the parties should not be defeated by "inept expressions." *Ad Two, Inc. v. City & Cty. of Denver ex rel. Manager of Aviation*, 9 P.3d 373, 377 (Colo. 2000). With the backdrop of a liberal policy in favor of arbitration agreements, the Court finds that Defendants' arguments here are more persuasive. *See Epic Sys. Corp.*, 138 S. Ct. at 1621.

In evaluating the specific language of the NAF Arbitration Clause applicable here, the Court finds the language is most similar to the arbitration provision in *Khan v. Dell Inc.*, 669 F.3d at 351; *Motion* [#33] at 11. In *Khan*, the relevant language stated that any disputes "SHALL BE RESOLVED EXCLUSIVELY AND FINALLY BY BINDING ARBITRATION ADMINISTERED BY THE NATIONAL ARBITRATION FORUM (NAF) under

its Code of Procedure . . . ." *Id.* The court in *Khan* found the "integral" issue to be ambiguous, because it was unclear if the "exclusive" language modified "BINDING ARBITRATION, THE NATIONAL ARBITRATION FORUM, or both." *Id.* at 355 (internal quotation marks omitted). The court found that this ambiguity should be resolved in favor of arbitration. *Id.* at 356.

The language in the NAF Arbitration Clause here states that any dispute "shall be settled by binding arbitration administered by the National Arbitration Forum ("NAF") under its Code of Procedure . . . ." *Motion* [#33] at 11. Here, as in *Khan*, it is unclear whether the language "settled by" modifies "binding arbitration," NAF, or both. *Id.* The Court finds the same reasoning applied in *Khan* persuasive here. The ambiguity in the NAF Arbitration Clause's NAF provision should also be resolved in favor of arbitration. *Khan*, 669 F.3d at 356.

Even if the "integral" test does not control, the text of the FAA supports arbitration in this situation. The Seventh Circuit in *Green* rejected application of the "integral" test, finding no link to such a test in the text or background of the FAA. 724 F.3d at 792. Pointing to recent Supreme Court precedent insisting that the FAA not be "added to in a way that overrides contracts to resolve disputes by arbitration," the *Green* court found that the language of the agreement in question made the parties' intent to arbitrate clear. *Id.* at 792-93 (citing *Am. Express Co. v. Italian Colors Rest.*, 133 S. Ct. 2340 (2013)). Here, as in *Green*, the intent of the parties to arbitrate their claims is clear. The language of the NAF Agreement states "EXCEPT AS EXPRESSLY PROVIDED IN THIS PARAGRAPH, THE PARTIES WAIVE ALL RIGHTS TO A COURT OR JURY TRIAL TO RESOLVE

AGREEMENT DISPUTES." *Motion* [#33] at 11. Thus, the Court gives full effect to the general purpose of the agreement, which in the NAF Arbitration Clause is to arbitrate. *Ad Two, Inc.*, 9 P.3d at 377. Accordingly, the Court finds the NAF Arbitration Clause to be enforceable with respect to Plaintiff Frazier despite the unavailability of the named arbitrator. *See Green*, 724 F.3d at 792-93; *Khan*, 669 F.3d at 354.

### b. Whether the NAM Arbitration Clause is Enforceable

Plaintiffs also challenge the enforceability of the NAM Arbitration Clause. *Response* [#52] at 15. Plaintiffs assert that the NAM Arbitration Clause is unenforceable because it is unconscionable. *Id.* at 20-25.

In Colorado, for a contract to be unconscionable, it must be both substantively and procedurally unconscionable. *Vernon v. Qwest Commc'ns Int'l, Inc.*, 925 F. Supp. 2d 1185, 1194 (D. Colo. 2013) (citing *Davis v. M.L.G. Corp.*, 712 P.2d 985, 991 (Colo. 1986)). Seven factors are evaluated when determining whether a contract is unconscionable: (1) whether the contract is a standardized agreement executed by parties of unequal bargaining power; (2) lack of an opportunity to read or become familiar with the document before signing it; (3) use of fine print in the portion of the contract containing the provision; (4) absence of evidence that the provision was commercially reasonable; (5) the terms of the contract; (6) the relationship of the parties, including factors of assent, unfair surprise, and notice; and (7) all the circumstances surrounding the formation of the contract. *Id.* The first, second, third, sixth, and seventh factors relate to procedural unconscionability. *Vernon*, 925 F. Supp. 2d at 1195. The fourth and fifth factors relate to substantive unconscionability. *Id.*

Arbitrability disputes are for the arbitrator unless the party contesting arbitration specifically challenges the delegation clause included in the parties' agreement. *Rent-A-Center, W., Inc.*, 561 U.S. at 72. The NAM Arbitration Clause contains a delegation clause providing, "[t]he arbitrator shall also decide what is subject to arbitration." *Motion* [#33-2] at 8. The Court finds that Plaintiff's procedural unconscionability arguments challenge the larger Terms and Conditions, not just the specific delegation clause of the NAM Arbitration Clause. For example, Plaintiffs argue that the NAM Arbitration Clause is a "standardized agreement executed by parties of unequal bargaining power." *Response* [#52] at 21. However, Plaintiffs support this proposition by citing to a case that refers to the larger Terms and Conditions as an "adhesion contract." *See Tennille*, 2011 WL 6778780, at *1. The same "non-negotiable" nature that Plaintiffs assert regarding the NAM Arbitration Clause also applies to the entirety of the Terms and Conditions, because the individual Plaintiffs were in no better position to negotiate the NAM Arbitration Clause provision than any of the other provisions in the Terms and Conditions. Challenges that are "related to the enforceability of the arbitration agreement as a whole, rather than a specific challenge to the arbitration agreement's delegation clause" are for the arbitrator. *Colon v. Conchetta, Inc.*, No. 17-0959, 2017 WL 2572517, at *4 (E.D. Pa. June 14, 2017).

Here, most of Plaintiffs' arguments are directed at the NAM Arbitration Clause and Terms and Conditions in their entirety, not the delegation clause. *Sherman Decl.* [#33-2] at 8. Plaintiffs argue, for example, that the individual Plaintiffs "did not have an opportunity to read or become familiar with the relevant terms of the agreement before signing it." *Response* [#52] at 22. However, nothing in Plaintiffs' argument specifically challenges Plaintiffs' ability to read and understand the delegation clause. *Id.* at 21-25. The Supreme

Court has rejected attempts to determine the validity of a delegation clause only on the basis of the clause's inclusion in an invalid agreement. *Rent-A-Center, W., Inc.*, 561 U.S. at 73. Thus, without deciding whether the Terms and Conditions are unconscionable, Plaintiffs' failure to specifically challenge the delegation clause requires that the Court sever and enforce that clause. *Id.* at 72.

Substantively, Plaintiffs' arguments relating to the fourth and fifth elements concern whether Plaintiffs were stripped of their substantive rights to pursue statutory RICO claims. *Response* [#52] at 22. RICO dictates that prevailing parties "shall recover" the costs of the lawsuit and reasonable attorneys' fees. *See* 18 U.S.C. § 1964(c) (2018). Plaintiffs argue that because the NAM Arbitration Clause does not explicitly guarantee Plaintiffs attorneys' fees and gives the arbitrator discretion in awarding costs and fees, Plaintiffs are stripped of their rights to pursue RICO claims because arbitration leaves open the possibility that Plaintiffs will have to pay Defendants' and their own attorneys' fees. *Response* [#52] at 16, 22. Plaintiffs' substantive unconscionability arguments are effective vindication arguments. *Response* [#52] at 22. "Effective vindication" is an exception to the FAA which invalidates arbitration agreements that waive certain rights to pursue statutory remedies. *Italian Colors Rest.*, 133 S. Ct. at 2310. Plaintiffs assert that because RICO guarantees attorneys' fees to prevailing parties and does not contemplate exposing a plaintiff to the risk of paying a defendant's attorneys' fees, Plaintiffs should not have anticipated a situation where they must risk paying their own attorneys' fees to pursue their RICO claims. *Response* [#52] at 23. Further, Plaintiffs assert that the NAM Arbitration Clause places them at risk of incurring greater costs than they otherwise would by litigating their substantive RICO claims in federal court, and thus they are stripped of their right to pursue these substantive claims.

*Id.* at 22-23. Plaintiffs' arguments here are the same as their arguments regarding effective vindication, which is discussed below in Section III.2, and also fall short in the context of unconscionability. The NAM Arbitration Clause only subjects Plaintiffs to up to $125 in arbitration costs, and allows the arbitrator to reduce this amount on a demonstration of hardship. *Motion* [#33-2] at 8. The parties have directed the Court's attention to nothing in the NAM Arbitration Clause or Rules mandating that Plaintiffs pay Defendants' attorneys' fees if their claims are unsuccessful. *See id.* Moreover, arbitrator discretion with respect to attorneys' fees, as discussed below, does not automatically invalidate an arbitration agreement. *See Hill v. Ricoh Americas Corp.*, 603 F.3d 766, 779-80 (10th Cir. 2010).

Additionally, these arguments suffer a similar flaw as Plaintiffs' procedural unconscionability arguments because they challenge a provision of the NAM Arbitration Clause other than the delegation clause. When a delegation clause is present in an arbitration agreement, the party opposing arbitration must specifically dispute the validity of the delegation clause. *Rent-A-Center, W., Inc.*, 561 U.S. at 72. Otherwise, the delegation clause can be severed from the arbitration provision as a whole and the arbitrator must decide arbitrability disputes. *Id.* Plaintiffs' arguments challenge the use of NAM's Comprehensive Dispute Resolution Rules and Procedures (the "NAM Rules") in the NAM Arbitration Clause, and application of the NAM Rules in the context of attorneys' fees. *Response* [#52] at 22. Plaintiffs assert that if the NAM Rules apply, Plaintiffs will not be able to recover the attorneys' fees they are entitled to under RICO, and that the NAM Rules subject Plaintiffs to the risk of paying Defendant's attorneys' fees. *Id.* at 22-23. This

argument is not directed at the specific delegation provision[9] contained in the Arbitration Clause; rather it is directed to the provision of the Arbitration Clause which calls for use of the NAM Rules, implicating the entire cost of the arbitration dispute. Arguments relating to the cost of arbitrating the entire dispute do not specifically address the cost of permitting the arbitrator to determine only arbitrability through the delegation clause. Therefore, they are for the arbitrator to decide. *See Rent-A-Center, W., Inc.*, 561 U.S. at 74 (holding that fee sharing and discovery cost arguments do not raise specific challenges to the delegation provision). Accordingly, the Court finds that Plaintiffs' procedural and substantive unconscionability arguments challenge the validity of the NAM Arbitration Clause and the larger Terms and Conditions as a whole. Given that Plaintiffs do not separately contend that the delegation clause is unconscionable, the Court severs that clause to allow the arbitrator to decide Plaintiffs' unconscionability arguments. *Id.* at 72.

## 2. Whether Plaintiffs' RICO Claims Fall Outside the Scope of the Arbitration Clause and the FAA

While the FAA favors a liberal policy favoring arbitration, the final clause of Section 2 of the statute contains a "savings clause." *Nesbitt v. FCNH, Inc.*, 811 F.3d 371, 376 (10th Cir. 2016). This clause allows an arbitration agreement to be invalidated by "generally applicable contract defenses, such as fraud, duress, or unconscionability, but not defenses that apply only to arbitration or that derive their meaning from the fact that an agreement to arbitrate is at issue." *Id.* (internal quotation marks omitted). As explained above, federal courts recognize an effective vindication exception to the FAA, invalidating arbitration

---

[9] The delegation clause in the NAM Arbitration Clause provides "[t]he arbitrator shall also decide what is subject to arbitration." *Sherman Decl.* [#33-2] at 8.

agreements that operate as a "prospective waiver of a party's *right to pursue* statutory remedies." *Italian Colors Rest.*, 133 S. Ct. at 2310 (quoting *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 637 n.19 (1985)) (internal quotation marks omitted). Arbitration agreements which prohibit the use of judicial forums as the means of resolving statutory claims "must also provide for an effective and accessible alternative forum." *Shankle v. B–G Maint. Mgmt. of Colo., Inc.*, 163 F.3d 1230, 1233-35 (10th Cir. 1999).

Plaintiffs argue that the NAM Arbitration Clause fails to provide an effective forum for resolving Plaintiffs' RICO claims because: (1) the NAM Arbitration Clause strips Plaintiffs of their right to attorneys' fees and costs as prevailing parties under RICO; (2) the NAM Arbitration Clause exposes Plaintiffs to the possibility of paying Defendants' attorneys' fees; and (3) the NAM Arbitration Clause limits Plaintiffs' discovery in a way that effectively precludes Plaintiffs from asserting their RICO claims. *Response* [#52] at 15-16.

The effective vindication exception prevents a party from waiving its right to pursue statutory remedies, and covers arbitration agreements "forbidding the assertion of certain statutory rights." *Italian Colors Rest.*, 570 U.S. at 236. However, financial constraints on proving a statutory remedy do not eliminate the right to pursue that remedy. *Id.* The fact that the arbitrator in the NAM Arbitration Clause retains discretion to award costs and fees does not preclude Plaintiffs from collecting attorneys' fees if they prevail on their RICO claims. *See Hill*, 603 F.3d at 779-80 (holding that an arbitration agreement that grants discretion to the arbitrator to award costs and fees did not prevent the plaintiff from pursuing Sarbanes-Oxley Act claims). Further, Plaintiffs' speculation and assumption that the arbitrator will be hostile to the substantive rights of their RICO claims regarding

attorneys' fees does not justify the invalidation of the NAM Arbitration Clause. *Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 91 (2000). The "Supreme Court has made it clear [that] such an assumption is inappropriate." *Hill*, 603 F.3d at 779-80 (citing *14 Penn Plaza LLC v. Pyett*, 556 U.S. 247 (2009)).

### a. Attorneys' Fees

The Court addresses Plaintiffs' two arguments regarding attorneys' fees together. As stated above, Plaintiffs argue that the NAM Arbitration Clause deprives Plaintiffs of their automatic right to attorneys' fees as a prevailing party. *Id.* at 16. The NAM Arbitration Clause requires arbitration to be conducted under the NAM Rules, which state that the arbitrator "may" award the total costs of arbitration or legal representation to one party, or apportion costs as the arbitrator deems appropriate. *Response* [#52] at 16; *Levitt Decl.* [#52-2] at 20. Because RICO[10] mandates that prevailing parties "shall recover" costs and reasonable attorneys' fees, Plaintiffs argue that the discretion left to the arbitrator to award attorneys' fees and costs denies Plaintiffs their guaranteed right of recovery of attorneys' fees and costs. *Response* [#52] at 16. Further, Plaintiffs argue that the arbitrator discretion in the NAM Rules would also improperly expose Plaintiffs to the risk of paying Defendants' attorneys' fees. *Id.* at 18.

Defendants argue that the NAM Arbitration Clause does not preclude Plaintiffs' right to pursue statutory RICO claims. *Reply* [#56] at 14. In support of this argument, Defendants assert that the NAM Rules, while granting discretion to the arbitrator in awarding fees, do not mandate that the arbitrator "disregard applicable law in rendering any

---

[10] *See* 18 U.S.C. § 1964(c).

decisions." *Id.* at 15. Defendants also argue that similar arguments regarding discretionary fee awards by the arbitrator have been rejected in the Tenth Circuit and by the Supreme Court. *Id.* at 15-16. The Court agrees.

Here, nothing in the NAM Arbitration Clause requires Plaintiffs to incur their own costs and attorneys' fees if they prevail, nor does it require Plaintiffs to pay Defendants' attorneys' fees if they lose. *Motion* [#33-2] at 8. Additionally, while the NAM Arbitration Clause requires Plaintiffs to bear some arbitration cost, that cost is expressly limited to $125. *Id.* Here, Plaintiffs' concern that the arbitrator will ignore Plaintiffs' rights to attorneys' fees and costs under the appropriate RICO statute is speculative. *Randolph*, 531 U.S. at 91. Thus, Plaintiffs' have not demonstrated that the NAM Arbitration Clause strips them of their statutory rights under RICO to pursue claims.

Plaintiffs point to three cases in support of their position. *Response* [#52] at 16-18. Plaintiffs' authority, however, involves situations in which the plaintiffs faced arbitration agreements requiring them to pay attorneys' fees and costs. *See Nesbitt v. FCHN, Inc.*, 811 F.3d 371, 375, 380-81 (10th Cir. 2016) (invalidating an arbitration agreement with rules mandating each party to bear the expense of its own counsel, experts, witnesses and preparations of proof); *Shankle v. B-G Maint. Mgmt. of Colo. Inc.*, 163 F.3d 1230, 1234-35 (10th Cir. 1999) (invalidating an arbitration agreement that required plaintiff to pay arbitration costs of up to $5,000); *Grigsby v. Income Prop. USA, LLC*, No. 2:17-CV-1110, 2018 WL 4621766, at *6, *8 (D. Utah Sept. 26, 2018) (invalidating an arbitration agreement that required arbitrating parties to incur their own attorneys' fees and costs). Here, neither the NAM Arbitration Clause nor the NAM Rules require Plaintiffs to incur their own attorneys' fees and costs. *Motion* [#33-2] at 8; *Levitt Decl.* [#52-2] at 20. Thus, the Court

finds that the NAM Arbitration Clause is not invalidated by the arbitrator's discretion regarding attorneys' fees and costs.[11]

### b. Discovery Costs

Turning to discovery costs, Plaintiffs assert that the provision of the NAM Arbitration Clause providing that "the costs of discovery must be commensurate with the amount of the claim" precludes effective vindication of Plaintiffs' RICO claims. *Response* [#52] at 19. Plaintiffs argue that the broad and technical nature of RICO claims, and the burden of establishing a pattern of racketeering activity, warrant extensive discovery. *Id.* Additionally, Plaintiffs contend that a "single three-hour deposition . . . limited solely to the issue of arbitrability" would cost over $500. *Id.* at 20. Therefore, Plaintiffs contend that limiting Plaintiffs' discovery to the amounts commensurate with each Plaintiffs' individual claim (a range of $525-$12,000) effectively precludes Plaintiffs' RICO claims. *Id.*

Defendants assert that the Supreme Court rejected a similar argument in *Italian Colors Restaurant*, and other federal courts have applied that same reasoning specifically to RICO claims. 570 U.S. at 231-36; *Reply* [#56] at 17. The Court agrees. In *Italian Colors Restaurant*, no plaintiff's claim exceeded $38,549, and the cost of discovery was estimated at over $1 million. 570 U.S. at 231. The Supreme Court found "the fact that it is not worth the expense involved in proving a statutory remedy does not constitute the elimination of

---

[11] Plaintiffs also challenge the severability of the NAM Rules from the NAM Arbitration Clause. *Response* [#52] at 25. Plaintiffs argue that even if the Court finds that the NAM Arbitration Clause prevents Plaintiffs from effective vindication of their RICO claims, Defendants will try to sever the impermissible attorneys' fees NAM Rules. *Id.* at 25. Plaintiffs further argue that neither the NAM Arbitration Clause itself nor the NAM Rules allow severance of individual NAM Rules. *Id.* However, as discussed above, the Court finds nothing invalid regarding the NAM Arbitration Clause or NAM Rules with respect to attorneys' fees that require severance. Therefore, there is no need to address severability in this instance.

the right to pursue the remedy." *Id.* at 236. Here, the possibility that discovery costs will greatly outweigh the amount recoverable in Plaintiffs' arbitration claims does not prevent Plaintiffs from pursuing their statutory RICO rights. Thus, Plaintiffs' effective vindication argument with respect to discovery costs fails. *Id.*

### IV. Conclusion

Based on the foregoing,

IT IS HEREBY **ORDERED** that the Motion [#33] is **GRANTED**. Accordingly,

IT IS FURTHER **ORDERED** that the Clerk of Court shall **administratively close** this case in order to allow the parties to participate in arbitration proceedings. *See* D.C.COLO.LCivR 41.2 (". . . [A] magistrate judge exercising consent jurisdiction may order the clerk to close a civil action administratively subject to reopening for good cause.").

IT IS FURTHER **ORDERED** that, **no later than twenty days** after the completion of the arbitration proceedings, the parties shall file a Status Report in which they advise the Court whether the parties believe the case should be reopened for good cause or whether the case should be dismissed.


Dated: March 27, 2019

BY THE COURT:

Kristen L. Mix
United States Magistrate Judge